### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF ALASKA

| | |
|---|---|
| In re: | Case No. 18-00071-GS |
| JESSICA GIROUX, | Chapter 13 |
| Debtor. | |

### MEMORANDUM DECISION RE: OBJECTION TO PROOF OF CLAIM 5

The debtor, Jessica Giroux, objects to proof of claim 5 (Claim) under 11 U.S.C. § 502(d), alleging that certain pre-petition payments made to the claimants, Philip and Rebekah Johnston, constitute fraudulent and preferential transfers that have not been repaid.  For the reasons set forth below, the court will sustain Jessica's objection in part and deny it in part.

### A.     BACKGROUND

Brad Giroux (Jessica's husband) and co-claimant Philip Johnston were partners in Alaska Fishing Adventures, LLC (AFA), operating a fishing lodge on the Nushagak River in Alaska.[1]  Their business relationship soured as Johnston came to believe Brad was mismanaging the business.[2]  Philip and his wife, Rebekah (who also worked for AFA), sued Brad and Jessica for various business-related infractions.[3]  The Johnstons obtained a state court judgment against the Girouxes.[4]  Liability for the principal amount of the judgment, pre- and post-judgment interest and punitive

---

[1] Proof of claim 5-1 at p. 10.

[2] *Id.* at pp. 11-14.

[3] *Id.* at p. 8.

[4] *Id.*

damages was imposed solely on Brad Giroux.[5]  Jessica was held jointly and severally liable with Brad on the attorney's fees and costs awarded in the judgment.[6]

On March 7, 2018, Jessica commenced this chapter 13 bankruptcy case.  Her schedules and statements revealed that she is employed as a doTERRA sales representative.[7]  Jessica also owns a related business, Essential Adventures, LLC.[8]  On May 1, 2018, the Johnstons filed the Claim in the unsecured amount of $102,282.06.  An accounting attached to the Claim reflected multiple payments received by the Johnstons pre-petition.[9]  The Internal Revenue Service (IRS) also filed proof of claim 1-1, modified on March 16, 2018 to reflect a total debt of $174,530.10.  Out of its claim, the IRS asserts that $122,338.84 is entitled to priority treatment under § 507(a)(8).

On July 26, 2018, Jessica filed her objection to the Claim (Objection).[10]  She asserts that her pre-petition payments to the Johnstons constitute preferential and fraudulent transfers avoidable under §§ 547 and 548, and recoverable under § 550.  Jessica contends that the following payments were made to the Johnstons on their state court judgment via cashier's checks, pre-petition:

---

[5] *Id.* at p. 6.

[6] *Id.*

[7] ECF No. 12-7 at p. 1.

[8] ECF No. 13 at p. 12.

[9] Proof of claim 5-1 at p. 4.

[10] ECF No. 42.

2

| DATE | TOTAL PAYMENT | APPLIED TO BRAD'S DEBT | APPLIED TO JOINT DEBT |
|---|---|---|---|
| November 20, 2017 | $1,750.00 | $1,374.98 | $375.02 |
| November 28, 2017 | $500.00 | $392.85 | $107.15 |
| December 20, 2017 | $2,250.00 | $1,767.82 | $482.18 |
| January 20, 2018 | $5,000.00 | $3,928.50 | $1,071.50 |
| February 20, 2018 | $5,000.00 | $3,928.60 | $1,071.40 |

Jessica argues that all payments attributed to Brad's judgment debt are avoidable under § 548 as constructive fraudulent transfers because the benefit for those payments flowed solely to Brad. Jessica contends that she did not receive any benefit from the payments. In the Objection, Jessica argues that these payments were allocated on a pro-rata basis between her and her husband's liability. She further posits that all payments applied to the joint portion of the judgment are avoidable under § 547 as preferential transfers because the proceeds of those payments, after avoidance by a hypothetical chapter 7 trustee, would flow to the Internal Revenue Service. Jessica alleges that the Johnstons have not repaid the pre-petition payments, and accordingly, requests that the Claim be disallowed in its entirety under § 502(d).

The Johnstons filed their response to the Objection on August 27, 2018.[11] They make four brief arguments: (1) Jessica cannot object to the Claim prior to confirming a chapter 13 plan; (2) all pre-petition payments were received from Brad, not Jessica; (3) Jessica's arguments must be raised via adversary proceeding; and (4) the chapter 13 trustee must bring causes of action under §§ 547 and 548.

---

[11] ECF No. 51.

3

The court held its initial hearing on the Objection on August 29, 2018. At that hearing, the parties agreed to enter into settlement discussions before the Hon. Trish Brown.[12] The court continued the hearing on the Objection to October 15, 2018, to give the parties time to negotiate a consensual resolution of their disputes.[13] The negotiations were unsuccessful, and at the October 15, 2018 hearing the court heard live testimony from Jessica in support of the Objection.

Jessica testified that over several months she transferred funds from the Essential Adventures, LLC's business bank account to her joint personal account with Brad. Jessica would deposit Essential Adventure checks made payable to herself into the account and then obtain a cashier's check for payment to the Johnstons. Four of the five checks Jessica deposited into the joint checking account were immediately followed by payments to Philip Johnston that same day. The fifth payment was made after two deposits; the first of which was made two days prior to payment and the second was made the day of the payment. The payments to Phillip Johnston were made by cashier's check drawn from the joint account. The cashier's checks referenced "Bradley Giroux."[14] Jessica further testified that the payments were made for the purpose of deferring any collection actions to be taken by the Johnstons against Jessica and Brad, while the parties attempted to negotiate a settlement.

After hearing argument from the parties at the October 15, 2018 hearing, the court took this matter under advisement. For the reasons set forth below, the court will grant Jessica's motion in part, and will temporarily disallow the Johnstons' proof of claim pending payment of the preferential transfers they received pre-petition.

---

[12] ECF No. 52.

[13] ECF No. 54.

[14] ECF No. 51 at pp. 3-4.

## B.   ANALYSIS

Section 502(a) provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest...objects."  A party in interest may rebut the resulting presumption of allowance by presenting evidence "with probative value equal to that of the proof of claim to rebut the claim. If the objecting party successfully rebuts the presumption, the claimant bears the burden of proof to show by a preponderance of the evidence that its claim is valid, and the 'ultimate burden of persuasion remains at all times upon the claimant.'"[15]  However, § 502(d) provides, in pertinent part, that "notwithstanding subsection[] a...the court shall disallow any claim of any entity...that is a transferee of a transfer avoidable under section...547 [or] 548...of this title, unless such entity or transferee has paid the amount...for which such entity or transferee is liable under section...550...of this title."  In short, "§ 502(d) disallows the claims of creditors who have received avoidable transfers, unless the creditor relinquishes the transfer."[16]  Contrary to the Johnstons' argument that Jessica may not raise her objection until after her chapter 13 plan is confirmed, "[Federal] Rule [of Bankruptcy Procedure] 3007 does not provide a time limit for objections to proofs of claim[], and such an objection may be filed at any time."[17]

Under § 502(d), this court's initial inquiry is whether the Johnstons are transferees of avoidable transfers.[18] Jessica alleges the payments she made to the Johnstons pre-petition constitute

---

[15] *Boruff v. Cook Inlet Energy LLC (In re Cook Inlet Energy LLC)*, 583 B.R. 494, 501 (B.A.P. 9th Cir. 2018) (quoting *Lundell v. Anchor Constr. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000)).

[16] *El Paso City of Texas v. America West Airlines, Inc. (In re America West Airlines, Inc.)*, 217 F.3d 1161, 1163 (9th Cir. 2000) (citing *United States Lines, Inc. v. United States (In re McLean Indus.)*, 184 B.R. 10, 14 (Bankr. S.D.N.Y. 1995), *aff'd*, 196 B.R. 670 (S.D.N.Y. 1996)).

[17] *Shook v. CBIC (In re Shook)*, 278 B.R. 815, 828 (B.A.P. 9th Cir. 2002).

[18] *Id.* at 1164.

5

avoidable transfers under §§ 547 and 548.  The Johnstons argue that such allegations must be brought via adversary proceeding.  The court disagrees.  "To assure the effectuation of the purpose of [§ 502(d)], a claim may be disallowed at least temporarily and for certain purposes, subject to reconsideration, simply upon the allegation of an avoidable transfer...this initial disallowance should be made by judicial determination, *whether it be obtained in a claim objection* or by some form of a declaratory judgment action."[19]  Accordingly, Jessica's Objection is sufficient to bring the issue before this court for adjudication, and the court will examine whether the transfers in question are avoidable under §§ 547 and 548.[20]

### 1.      Preferential Transfers Under § 547

Under § 547(b), "a trustee may avoid any transfer of an interest of the debtor in property (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition;...and (5) that enable[d] such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent

---

[19]  4 COLLIER ON BANKRUPTCY ¶ 502.05[2][a] (Richard Levin & Henry J. Sommer eds., 16th ed.) (citing *Seta Corp. of Boca, Inc. v. Atlantic Computer Sys. (In re Atlantic Computer Sys.)*, 173 B.R. 858 (S.D.N.Y. 1994)) [emphasis added]; *see also In re Vivaro Corp.*, 541 B.R. 144, 155 (Bankr. S.D.N.Y. 2015).

[20]  The Johnstons further contend that only a trustee may seek to avoid transfers under §§ 547 and 548, and thus the Objection must be overruled. Although Ninth Circuit case law suggests otherwise (*see Houston v. Eiler (In re Cohen)*, 305 B.R. 886 (B.A.P. 9th Cir. 2004)), the situation at hand is a claim objection, not an avoidance action.  "'The debtor may be a party in interest with standing to object to a proof of claim.'" *In re de la Salle*, 2012 WL 8143977, at *3 (Bankr. E.D. Cal. June 15, 2012) (quoting 4 COLLIER ON BANKRUPTCY ¶ 502.02[2][d] (Richard Levin & Henry J. Sommer eds., 16th ed.).

provided by the provisions of this title."[21]  The moving party must prove each element under § 547 by a preponderance of the evidence.[22]

First, this court must determine whether the funds received by the Johnstons constitute "transfers of an interest of the debtor in property."  The Bankruptcy Code defines a "transfer" extremely broadly to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with - (i) property; or (ii) an interest in property."[23]  The monies used to pay the Johnstons came from Jessica via a joint checking account.  This establishes a transfer of an interest of the debtor in property."[24]

Next, by virtue of filing their proof of claim in the debtor's case, the Johnstons concede that they are creditors of the debtor.  The accounting attached to the Claim reflects that the Johnstons received payments on their claim.  The debt for which the payments were made was an antecedent debt: the third amended state court judgment against Brad and Jessica was entered on September 11, 2017.[25]  The transfers at issue were all made on or after November 20, 2017.  Ninety days before the date of the filing of the petition was December 7, 2017.  Accordingly, the payments made to Phillip Johnston on December 20, 2017, January 20, 2018 and February 20, 2018 were all made within 90 days of the petition date.  Also, according to Jessica, in light of the IRS's substantial priority tax

---

[21]  11 U.S.C. § 547(b).

[22]  *Ehrenberg v. Tenzer (In re Heartbeat of the City, N.W., Inc.)*, 2006 WL 6810939, at *6 (B.A.P. 9th Cir. Apr. 5, 2006) (citing *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1073 (9th Cir.2000)).

[23]  11 U.S.C. § 101(54).  *See also In re Avery*, 461 B.R. 798, 821 (Bankr. D. Alaska 2011) (quoting *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir.1996)) [emphasis in original].

[24]  *Waldschmidt v. Sanders (In re Sanders)*, 213 B.R. 324, 332 (Bankr. D. Tenn. 1997).

[25]  *See* proof of claim 5-1 at p. 7.

claim, the transfers made to the Johnstons pre-petition enabled them to receive more than they would have received if this case were pending under chapter 7.[26]  The Johnstons have not contested that assertion.

The final factor to be examined is § 547(b)(3), which requires that the debtor be insolvent at the time the debtor made the transfer.  Section 547(f) provides that "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of filing the petition."[27]  "This presumption does not shift the ultimate burden of proof...it merely shifts the initial burden of going forward with the evidence."[28]  Because neither party has provided any evidence to rebut the presumption under § 547(f), the debtor is presumed to be insolvent for purposes of the court's analysis.  Thus, all of the elements of § 547(b) have been satisfied by a preponderance of the evidence.  The court, therefore, finds that the payments made to the Johnstons on December 20, 2017, January 20, 2018 and February 20, 2018 constitute preferential transfers under § 547 for purposes of disallowing the Johnstons claim under § 502(d) until such preferential payments are repaid.

---

[26] The court takes judicial notice of the debtor's schedules pursuant to Fed. R. Evid. 201.  Jessica disclosed $133,601 in assets comprised primarily of her interest in Essential Adventures.  She also disclosed $281,000.67 in debts. ECF No. 12. This further demonstrates that in a hypothetical chapter 7 distribution creditors would not receive 100% of their claims. *See Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.),* 778 F.2d 1416, 1421 (9th Cir. 1985) ("[A]s long as the distribution in [the bankruptcy case] is less than one-hundred percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made.").

[27]  11 U.S.C. § 547(f).

[28]  *Sierra Steel, Inc. v. Totten Tubes, Inc. (In re Sierra Steel, Inc.)*, 96 B.R. 275, 277 (9th Cir. 1989).

### 2.   Constructive Fraudulent Transfers Under § 548

At the hearing on October 15, 2018, Jessica's counsel clarified on the record that Jessica alleges the portions of the pre-petition payments made to the Johnstons which were allocated to Brad's sole liability on the state court judgment are avoidable constructive fraudulent transfers. Section 548(a)(1)(B), which defines constructive fraudulent transfers, provides in pertinent part:

> (a)(1) The trustee may avoid any transfer...of an interest of the debtor in property... that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> ....
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....[29]

As with preferential transfers under § 547, "[t]o avoid a constructive fraudulent transfer, [Jessica] must prove each and every one of the elements of § 548(a)(1)(B) by a preponderance of the evidence."[30]

As discussed above, because the source of the money transferred to the Johnstons was Jessica's income from her doTERRA business and the transfer was made from a joint bank account, the transfers constitute an interest of the debtor in property.  Those transfers were made on or after November 20, 2017, well within two years of the March 7, 2018 petition date.

Regarding reasonably equivalent value, a portion of each payment was allocated to Jessica's joint liability under the state court judgment.  This was certainly value within the terms of the

---

[29]  11 U.S.C. § 548(a)(1)(B).

[30]  *Heartbeat of the City*, 2006 WL 6810939 at *9.

9

statute.[31]    Jessica argues, however, that she did not receive reasonably equivalent value. "The question of whether or not reasonably equivalent value was provided in exchange for a transfer is clearly a question of fact."[32]  To make this determination, the court must examine "what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost.'"[33]

Jessica testified at the October 15, 2018 hearing that the payments were made to the Johnstos to stall their collection efforts while the parties attempted to negotiate a settlement.  This suggests that Jessica may have received reasonably equivalent value for the transfers made: in exchange for the money given to the Johnstons, Jessica received the benefit of the Johnstons' forbearance of their collection efforts against her.  This benefit was disclosed in her Statement of Financial Affairs at item 18, where she described receipt of the Johnstons' forbearance of judgment collection as a "property or payments received or debts paid in exchange" for the payments made to them.[34]

Jessica did not address this issue in her Objection. At the hearing on the Objection her counsel stated only that he did not believe that Jessica received a reasonably equivalent value for the transfers.  Counsel's belief does not provide an evidentiary basis upon which this court could

---

[31]  *Official Committee of Unsecured Creditors, of the Estate of Fitness Holdings Intern., Inc. v. Hancock Park Capital II, L.P. (In re Fitness Holdings Intern., Inc.)*, 714 F.3d 1141, 1147 (9th Cir. 2013)("[A] transfer is for 'reasonably equivalent value' for purposes of § 548(a)(1)(B)(i) if it is made in repayment of a 'claim,' i.e., a 'right to payment' under state law.")

[32]  *Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research and Management, Inc.)*, 2015 WL 8483728, at *8 (B.A.P. 9th Cir. Dec. 10, 2015).

[33]  *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 597 (9th Cir. 1991) (quoting *Martin v. Phillips (In re Butcher)*, 58 B.R. 128, 130 (Bankr.E.D.Tenn.1986)).

[34]  ECF No. 13 at p. 9.

find that Jessica demonstrated, by a preponderance of the evidence, that she did not receive reasonably equivalent value for the pre-petition monetary transfers made to the Johnstons.

Finally, to satisfy the requirements for constructive fraudulent transfer, the payments in question must have been made while Jessica was insolvent, or they must have rendered her insolvent. Unlike § 547, § 548 does not contain a presumption of insolvency. "For purposes of 11 U.S.C. § 548(a)(1)(B)(ii)(I), insolvency is determined using a 'balance sheet test,' meaning the debtor's liabilities exceed its assets at fair valuation."[35]  As noted above, the parties have not presented this court with any evidence or argument regarding Jessica's solvency at the time the transfers in question were made. Jessica's schedules and statements present a picture of balance sheet insolvency as of the petition date, but this court will not make assumptions about Jessica's insolvency six months prior the filing of her petition for purposes of § 548. Jessica has not met her burden of proof as to this element.

Jessica has not persuaded this court: (1) that she did not receive reasonably equivalent value for the transfers made to the Johnstons, or (2) that she was insolvent at the time those transfers were made.  For these reasons, this court cannot conclude that the transfers in question were constructively fraudulent under § 548(a)(1)(B).

### 3.    Repayment of Avoidable Transfers

Having determined that the Johnstons are the transferees of avoidable transfers under § 547, the court must disallow the entirety of the Johnstons' claim.  However, under § 502(d), "[o]nce a claimant's liability has been determined, the claimant must be provided with a reasonable opportunity to turn over the property to the debtor's estate in compliance with [§] 502(d) before the

---

[35] *Weinman v. Walker (In re Adam Aircraft Industries, Inc.)*, 510 B.R. 342, 352-353 (B.A.P. 10th Cir. 2014);

claims may be disallowed."[36]  Payment of the preferential transfers will resurrect the Johnstons'

claim.  Because nothing in the record suggests that the Johnstons have repaid the preferences, their

claim must be disallowed under § 502(d).

## C.    CONCLUSION

The Johnstons received pre-petition monetary transfers from Jessica, and those transfers were

preferential under § 547.  The Johnstons' receipt of preferential transfers avoidable under § 550

mandates the disallowance of their proof of claim.  The court will enter a separate order temporarily

disallowing the Claim, which may be reinstated upon the filing of evidence demonstrating that the

Johnstons have repaid the amounts owed to Jessica on account of the preferential transfers they

received pre-petition.

DATED: December 17, 2018.

BY THE COURT
 /s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve:  Debtor
Robert Crowther, Esq.
N. Jipping, Trustee
Philip and Rebekah Johnston, 4145 Kingston Drive, Anchorage, AK 99504
U.S. Trustee
ECF Participants via NEF
Case Manager

---

[36] *Vivaro*, 541 B.R. at 155.

12